**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY CULVEY and REBECCA CULVEY, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22-CV-3495 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Zachary Culvey and Rebecca Culvey sue their homeowners insurance company, Defendant Auto-Owners Insurance Company, alleging that the company failed to adequately cover losses to their dwelling caused by hail and seeking to compel the company to submit to an appraisal process. *See* [1]. Plaintiffs move for judgment on the pleadings on one count of their three-count complaint. *See* [10]. For the reasons stated below, the Court grants their motion in part.

## I.    Factual Background

Defendant issued Plaintiffs a homeowners insurance policy ("the Policy") which covered their Aurora, Illinois, home from June 30, 2021 through June 30, 2022. [1] ¶ 5. The Policy insures against certain perils, including hail. [1-1] at 20 (providing coverage for "risk of accidental and direct physical loss" to the dwelling and personal property described therein "caused by . . . Windstorm or Hail."). The Policy provides that, if the insurer and the insured are unable to "agree on the actual cash value,

amount of loss or repair costs covered by this policy, either party may make a written demand for an appraisal." [1-1] at 37. The appraisal provision outlines the steps to be taken once a party makes such written demand:

> Each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

> The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by the two will determine the actual cash value or amount of loss.

> Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal. If you demand appraisal and your full amount of appraised loss is upheld by agreement of the appraisers or the umpire, then we shall pay your appraisal fee and the umpire's fee.

> We retain our right to deny the claim in the event there is an appraisal.

*Id.*

On July 9, 2021, Plaintiffs' home sustained hail damage, and Plaintiff submitted a claim to Defendant for the loss. [1] ¶¶ 7, 8. Defendant acknowledged that the loss was covered and issued a payment of $7,087.32, an amount calculated based upon the estimate Defendant obtained from its adjuster, factoring in its estimate of depreciation and the Policy's deductible. *Id.* ¶ 9; [1-2] at 4; [1-1] at 10. The figure fell well below the estimate Plaintiffs obtained from their contractor, who calculated that the amount of the loss was $72,934.40. [1] ¶ 10; [1-3] at 10. The

estimate from Defendant's adjuster, Reliable Adjusting Company Enterprises, covered siding repairs to two sides of Plaintiffs' home, [1-2], while Plaintiff's contractor, Benchmark Exteriors, included an estimate for siding repairs on all four sides of the house, [1-3].

On April 5, 2022, based upon the parties' disagreement, Plaintiffs made a written demand for appraisal. [1] ¶ 13. Defendant subsequently denied the demand, [16] at 2, and, on July 6, 2022, Plaintiffs sued for breach of contract (Count II) and bad faith claims handling (Count III). *See* [1]. They also seek a declaratory judgment "compelling and requiring the parties to proceed with appraisal in accordance with the terms of the "Appraisal" provision in the insurance policy to determine the amount of the loss . . . ." *Id.* at 4 (Count I). Plaintiffs now move for judgment on the pleadings as to Count I.

## II.    **Legal Standard**

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "after the pleadings are closed—but early enough not to delay trial." A motion for a judgment on the pleadings is evaluated under the same standard as a motion to dismiss. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Thus, when the plaintiff moves for judgment on the pleadings, the Court will grant the motion only if "it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

In considering the motion, the Court looks only to the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The Court "views all facts and inferences in the light most favorable to the non-moving party." *Federated Mut. Ins. Co.*, 983 F.3d at 13 (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).

## III. Analysis

Under Illinois law,[1] appraisal clauses are viewed as "analogous to arbitration clauses" and, like arbitration clauses, "are valid and enforceable in a court of law." *70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16-CV-07723, 2016 WL 6582583 at *4 (N.D. Ill. Nov. 7, 2016) (citing *Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 318–19 (Ill. App. Ct. 2001)). Illinois courts compel appraisal only "when the language of the appraisal clause is clear and unambiguous, and when it is obvious that the disputed issue falls within the scope of the clause." *Id.* (citing *Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 325–26 (Ill. App. Ct. 2002)). Illinois courts have found, however, that questions of law fall outside of the appraisal process. *See FTI Intern., Inc. v. Cincinnati Ins. Co.*, 790 N.E.2d 908, 910–11 (Ill. App. Ct. 2003). Instead, appraisal remains "a relatively limited process . . . whose primary function is to ascertain the value of property or the amount of loss." *Id.*

---

[1] The insurance policy does not appear to include a choice of law provision. But because this is a diversity suit brought in Illinois and neither party raises choice of law issues, the Court applies Illinois substantive law. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 345 (7th Cir. 2010) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985)). *See also Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.,* 796 F.3d 717, 723 (7th Cir. 2015) (Interpretations of an insurance policy pose substantive issues.) (citing *Alexander v. Erie Ins. Exch.,* 982 F.2d 1153, 1157 (7th Cir.1993)).

Here, neither party disputes that the language of the appraisal clause clearly and unambiguously calls for appraisal if the parties "fail to agree on the actual cash value, amount of loss or repair cost." [1-1] at 37; [1] ¶ 12. Defendant argues that the disagreements between the parties fall outside of this scope, and instead present issues of coverage not subject to appraisal. *See* [16] at 3, 5, 6. Thus, this motion turns on the question of whether the parties' dispute concerns whether a particular kind of loss is covered—in which case it stays with the court—or "the value of a covered loss— in which case it goes to appraisal." *River Grove Plaza Inc. v. Owners Ins. Co.*, No. 22-CV977, 2022 WL 16782412 at *1 (N.D. Ill. Nov. 8, 2022).

Plaintiffs set forth in their complaint seven specific disagreements over the amount of loss to the dwelling:[2]

> as reflected by the differences in their estimates, the parties disagree as to the amount of the loss to the dwelling, including, but not limited to, disagreeing as to (a) whether more than one roof vent and more than one exhaust cap were damaged by hail, (b) whether more than 20 linear feet of counterflashing was damaged by hail, (c) whether the roof shingles were damaged by hail, (d) whether more than two elevations of siding were damaged by hail, (e) the extent of the hail damage to the two elevations of siding that Auto-Owners included in its estimate, (f) the pricing needed to perform the repair/replacement of the items that Auto-Owners included in its estimate, and (g) whether the hail damage is extensive enough to require employing a general contractor.

[1] ¶ 11. As framed, these items "plainly concern the value of the loss, not the scope of coverage," and "disputes concerning the extent and cause of property damage are

---

[2] Defendant argues that the disagreements are too vague for the Court to provide meaningful instruction to appraisers. [16] at 8–9. But the identified disagreements naturally lead to the instruction requested by Plaintiffs—that appraisers should assess the extent of damage, the scope of the loss, the scope and cost of repairs and replacements, and whether a general contractor is necessary. [1] ¶ 16.

proper subjects for appraisal." *River Grove Plaza Inc. v. Owners Ins. Co.*, 2022 WL 16782412, at *3 (citing *Khaleel v. Amguard Ins. Co.*, No. 21-CV-992, 2022 WL 425733, at *2–3 (N.D. Ill. Feb. 11, 2022); *B&D Inv. Grp., LLC v. Mid-Century Ins. Co.*, No. 20-CV-3299, 2021 WL 6125853, at *3–4 (N.D. Ill. Dec. 28, 2021) (both ordering an appraisal to determine the extent of damage caused by hail)). Thus, the appraisal process can rightly resolve the question of whether hail damaged the roof vents, exhaust caps, roof shingles, and siding. Similarly, the question of whether the damage was extensive enough to justify hiring a general contractor relates to the costs required to make repairs, not to a question of coverage, and thus may properly be resolved through appraisal. *See Runaway Bay Condo. Ass'n v. Philadelphia Indem. Ins. Companies*, 262 F. Supp. 3d 599, 603–04 (N.D. Ill. 2017) (holding that the question of whether the damage is extensive enough to require employing a contractor is properly resolved through appraisal); *River Grove Plaza Inc.*, 2022 WL 16782412, at *2 ("whether a general contractor is necessary to repair the roof is subject to appraisal because it concerns 'who is qualified to perform [the] work' as well as 'how much that work costs.'") (quoting *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, No. 16- CV- 3860, 2017 WL 372308 at *2 (N.D. Ill. Jan. 26, 2017) (hereinafter, *Windridge I*)).

Defendant offers two reasons for its claim that the parties' disputes are not subject to appraisal. First, Defendant argues that the disagreements present issues of causation and that such issues are not subject to appraisal because they are legal issues, not issues of valuation. [16] at 3–6. Defendant has raised this same argument

in prior litigation and lost. *See Adam Auto Grp., Inc. v. Owners Ins. Co.*, No. 19 C3110, 2019 WL 4934597 at *2 (N.D. Ill. Oct. 7, 2019) (explaining that "courts have 'routinely' rejected the argument that issues that implicate damage causation are not appropriate for resolution by appraisal.") (citing *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 601)). Indeed, the valuation of damage remains inseparable from determining what caused that damage. *See id.* (citing *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 601); *see also B&D Inv. Grp., LLC*, 2021 WL 6125853 at *3 ("Determining the cause and extent of damage to the Property is an inherent part of an appraisal to determine the amount of loss.").

In making this argument, Defendant cites *Spearman Indus. Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000), where the court determined that the parties' dispute (concerning whether damage was caused by hail or by wear and tear) amounted to a dispute about causation, not valuation, and was thus not subject to appraisal. *See* [16] at 5. Significantly, other courts have declined to follow *Spearman* because its "discussion of the issue is very brief and does not disclose the basis for its conclusion," and, as discussed above, its conclusion ignores the basic function of appraisal. *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 602. Moreover, in this case, Defendant does not claim that Plaintiff's siding was damaged by wear and tear or some other cause; rather, as discussed below, it claims the siding not directly impacted by hail was not damaged. *Spearman* does not apply.

Defendant next argues that the parties dispute centers on whether the policy requires it to pay for matching—that is, to pay "to replace siding on undamaged

elevations where replacement is not available to match the undamaged siding." [16] at 6. To be sure, Plaintiff's Count 1 goes beyond issues concerning the extent and valuation of damage and seeks to compel Defendant to proceed with appraisal to determine "the amount of the loss," including "the damage to the dwelling caused by hail, the scope of the loss, the scope of repairing or replacing the hail damage, the cost of repairing or replacing the hail damage, *matching of replacement building components with existing building components, if necessary*, and whether the damage is extensive enough to require employing a general contractor." [1] at 4 (emphasis added).

The question of whether the Policy "requires replacement of undamaged property to achieve matching is not appropriate for appraisal." *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d 599, 603 (N.D. Ill. 2017). In *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (hereinafter, *Windridge II*), the Seventh Circuit made clear that the question of whether a policy covers "matching" turns on the specific language of the policy. In that case, the insurer wrote a "replacement-cost-policy," which, by definition provided "a make-whole remedy" that "must strive to approximate the situation the insured would have occupied had the [hail] not occurred." *Id.* The Court held that the policy language covered matching:

> while Philadelphia Indemnity's position that only the siding directly hit by the storm is covered is not indefensible and has some support in case law, the language of the policy is not so clear and in fact favors an interpretation that the unit of damaged property is the buildings as a whole—not solely each elevation or each panel of siding. . . . Philadelphia Indemnity would have us view the unit of damaged

8

> property as an individual side of a building, or individual panels of siding, or even mere sections of individual panels of siding. An interpretation of the policy that left Windridge with a horizontal or vertical striped effect on its buildings would not be reasonable. The better construction, and one certainly permitted by policy language that is ambiguous as applied to these facts, is that each building as a whole suffered direct physical loss as a result of the storm. The storm altered the appearance of the buildings such that they were damaged. Condominium buildings with mismatched siding are not a post-storm outcome that the insured was required to accept under this replacement-cost policy.

*Id.* at 1041. In resolving the issue, the Court held that the focus "is on the specific contract language." *Id.* at 1042. Given the make whole nature of the policy at issue in that case, and the nature of the damage, matching was required, and the insurer could either pay for the matching or pay the insured for the damage sustained by virtue of not getting the full benefit of its bargain:

> If one shingle at the corner of a slate roof is damaged and no matching replacement shingle is available, a building owner would not be entitled to an entire new roof. Windridge conceded as much at oral argument. Under the policy here, the building owner instead would be entitled to compensation for the (presumably minor) decrease in value of the building due to one non-matching shingle. By contrast, the decrease in value would be significant if a building were left with zebra-striped siding. In that case, the insurer would almost certainly choose to pay to replace the siding rather than compensate the building owner for the reduction in value of its building. Each building here suffered a direct physical loss, which was caused by or resulted from the hail and wind storm, and Philadelphia Indemnity therefore must pay to return the buildings to their pre-storm status—i.e., with matching siding on all sides. Windridge seeks only to be put back in the position it was in before the storm. Having mismatched siding on its buildings would not be the same position. Since no matching replacement siding is available, Philadelphia Indemnity must pay to replace all of the siding on Windridge's buildings.

*Id.*

At present, the record before the Court does not reveal whether this case is *Windridge*. But one thing is clear: the question of matching involves contract interpretation and coverage analysis and is not properly submitted to the appraisal process. *See also Windridge I*, 2017 WL 372308 at *2 ("The only question is coverage: whether this mismatch is a 'loss' within the meaning of the policy. And because the only question concerns coverage, the dispute is not subject to appraisal.") (citing *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 663 (Ill. App. Ct. 2015) and *FTI Int'l, Inc.*, 790 N.E.2d at 909–10). For this reason, the Court denies Plaintiffs' demand for appraisal as to the "matching of replacement building components with existing building components." [1] ¶ 16.

The existence of a coverage dispute, however, does not preclude the parties from proceeding with the appraisal process as to those disputes appropriately resolved via that process. *Wexler v. Chubb Nat'l Ins. Co.*, No. 21-CV-2543, 2022 WL 888944 at *5 (N.D. Ill. Mar. 25, 2022); *see also Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 603 (finding that existence of coverage dispute did not preclude appraisal on other amount-of-loss disputes); *Maggard v. CCC Info. Servs.*, No. 14-CV-2368, 2015 WL 1112088, at *4 (N.D. Ill. Mar. 10, 2015) (finding that non-valuation disputes did not preclude appraisal). Here, a dispute over matching will only arise if fewer than four elevations of siding were physically damaged by hail, *see* [10] at 8, and the parties dispute whether that is the case. [1] ¶ 11; [1-2]; [1-3]. As discussed above, whether hail caused physical damage to more than two sides of Plaintiffs' home is a

question appropriately resolved via appraisal. *See River Grove Plaza Inc.*, 2022 WL 16782412, at *3.

Defendant argues that the matching dispute must be resolved before appraisal can resolve the extent of loss issues. [16] at 6. To support its argument, Defendant relies upon *Windridge I*, a case in which the parties agreed that only two sides of a building were damaged by a storm, but the insured sought payment to repair all four sides so that all sides would match. *Id.* at *1. As the court noted there, "Windridge seeks the cost of repairing the physically undamaged sides to remedy a mismatch with the now-repaired damaged sides. There is no causation issue here; the hail storm physically damaged two sides, requiring their repair, and, as a result, those two sides no longer match the two other sides. The only question is coverage: whether this mismatch is a 'loss' within the meaning of the policy. And because the only question concerns coverage, the dispute is not subject to appraisal." *Id.* at *2.

Here, although the parties plainly dispute whether the policy would cover matching for undamaged property, they also dispute the extent of the loss associated with damage. In contrast to *Windridge I*, whether the Policy covers matching is not "the only question." 2017 WL 372308, at *2. Instead, the parties also dispute the extent of the hail damage, and those disputes remain appropriate for appraisal. [1] ¶ 11.

Indeed, the question of whether the Policy covers matching will arise only if the appraisal process determines that fewer than four sides of the home actually sustained damage caused by hail. As explained above, the parties each secured repair

11

estimates, which demonstrate that they do not agree on the actual cash value, amount of loss or repair costs involved. But the estimates do not demonstrate whether the differential stems from matching or from other differences of opinion concerning the extent of the actual damage. Defendant's estimate from Reliable Adjusting Company Enterprises includes siding repairs to the front and right elevations, as well as additional repairs to the roof and the back elevation, [1-2], whereas Plaintiffs' estimate from Benchmark Exteriors includes costs associated with repair of the roof and the front, back, right, and left elevations, [1-3]. But it is not clear that the additional repairs quoted by Benchmark relate to matching, as opposed to damage. Benchmark notes that the roof shingles and siding were discontinued and that no matching siding was available, *id.* at 2, 3, 4, but the estimate does not specifically say whether Benchmark found damage on all elevations or whether the estimate included replacement of non-damaged siding and roof shingles solely for matching purposes.

As explained above, the extent of the damage must be determined via appraisal and, if a dispute over matching emerges, the Court will resolve the coverage dispute based upon a more complete record. At present, a ruling on whether the policy covers matching remains premature, and the Court declines to issue such an advisory opinion. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967) (defending the ripeness doctrine on the basis that it allows courts to avoid "premature adjudication"); *Jones v. Griffith*, 870 F.2d 1363 (7th Cir. 1989) ("The rule against federal courts' issuing advisory opinions is part of a broader policy against unnecessary recourse to

federal courts. Federal courts exist to resolve cases rather than to help people prevent their disputes from turning into cases.").

## IV.  Conclusion

For the reasons discussed above, the Court finds that appraisal remains appropriate for most of the issues raised in Count I and thus grants Plaintiffs' motion for judgment on the pleadings, [10], in part.  The Court finds, however, that the question of matching relates to coverage, not the scope of the loss, and thus may not properly be resolved via appraisal.  The Court denies Plaintiffs' motion [10] insofar as it requests appraisal to determine whether the Policy requires matching of replacement building components with existing building components.  The parties shall proceed with appraisal, as specified in the Policy, to determine the damage to the dwelling caused by hail, the scope of the loss, the scope of repairing or replacing the hail damage, the cost of repairing or replacing the hail damage, and whether the damage is extensive enough to require employing a general contractor.  The case is stayed pending the outcome of the appraisal, and the parties shall file an updated status report within two weeks of the issuance of any written report, or by July 24, 2023, whichever occurs first.

Dated: April 24, 2023

Entered:

John Robert Blakey
United States District Judge

13